**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Carlos M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25 cv 50001 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Carlos M., seeks review of the final decision of the Commissioner of the Social Security Administration denying him disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On July 30, 2022, Carlos M. ("Plaintiff") filed a Title II application for disability and disability insurance benefits, alleging a disability beginning on March 1, 2019. On that same day, Plaintiff protectively filed a Title XVI application for supplemental security income. R. 17. The Social Security Administration denied his application initially on June 26, 2023, and upon reconsideration on November 28, 2023. *Id*. Plaintiff filed a written request for a hearing and on April 30, 2024, a telephonic hearing was held by Administrative Law Judge ("ALJ") Lana Johnson where Plaintiff appeared and testified. *Id*. Plaintiff was represented by counsel. *Id.* Tobey Andre, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

On June 18, 2024, the ALJ issued her written opinion denying Plaintiff's claim. R. 17-30. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [12]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [15], the Commissioner's response brief [19], and Plaintiff's reply [20].

**B. The ALJ's Decision**

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one,

the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2019, the alleged onset date. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: depression, anxiety, posttraumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), bilateral cubital tunnel syndrome status post bilateral decompression, bilateral carpal tunnel syndrome status post bilateral release, left thumb degenerative joint disease ("DJD"), DeQuervain's tenosynovitis, DJD and meniscus tear of the left knee status post meniscus repair, obesity, and diabetes mellitus ("DM") with diabetic polyneuropathy. R. 19-20. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. R. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 20-22.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following limitations. Plaintiff can frequently push and pull with the bilateral upper extremities and lower left extremity. He can occasionally climb ladders, ropes, or scaffolds, He can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can frequently reach in all directions, handle, finger, and feel bilaterally. Plaintiff can understand, remember, and carry out simple, routine instructions and is able to tolerate occasional interaction with supervisors, coworkers, and the general public. R. 22-29. At step four, the ALJ found that Plaintiff had no past relevant work. R. 29. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 29-30. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from March 1, 2019, through the date of her decision, June 18, 2024. R. 30.

**STANDARD OF REVIEW**

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

2

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues the ALJ did not support her decision with substantial evidence. Specifically, he argues: (1) the finding of capacity for light work in the RFC was unsupported; (2) the ALJ did not address whether Plaintiff could frequently reach, handle, and perform fine manipulations bilaterally; and (3) the ALJ performed a perfunctory analysis of listings for mental disorders. The Court finds that the ALJ adequately supported her decision with substantial evidence in all respects and finds no error in her analysis. Accordingly, the Court affirms the Commissioner's decision.

### Light Work in the RFC

First, Plaintiff argues that the ALJ's reliance on the medical opinions of Vittal Chapa, M.D. and Bharati Jhaveri, M.D. were based on outdated information to support the conclusion that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds and therefore could perform light exertional work. Dr. Chapa's opinion was based on a physical assessment of Plaintiff completed in June 2023. The ALJ found this opinion partially persuasive, indicating it was generally consistent with the medical evidence. R. 28. Dr. Jhaveri's opinion was based on a physical assessment of Plaintiff completed in November 2023. The ALJ found his assessment generally persuasive, noting that the opinion was based on and consistent with the medical record, including Plaintiff's report of functioning. *Id*. However, Plaintiff takes issue with the fact that these opinions were completed before Plaintiff underwent two bilateral surgeries for carpal tunnel release – one in November 2023 and one in January 2024. Plaintiff cites to two medical records to support his position that post-surgery he was only able to lift under 10 pounds, making him eligible for only sedentary work ("Sedentary work involves lifting no more than 10 pounds at a time…" 20 CFR § 404.1567). Plaintiff first cites to a January 2024 medical record where he reported to his treating physician that he was only able to hold a soda can in his right hand. [15], p. 4; R. 1814. Plaintiff then cites to a February 2024 medical record where he reported he was still working toward being able to lift with his right hand sufficiently to cook a meal. [15], p. 4; R. 1819. Plaintiff argues this medical evidence suggests that an RFC finding of light work was unsupported.

A more comprehensive review of Plaintiff's medical records reveals the following. Plaintiff underwent his first carpal tunnel surgery on November 28, 2023. R. 1826-28. Plaintiff then attended therapy and doctor's appointments from December 11, 2023, through January 24, 2023. Those reports include Plaintiff complaining of difficulty performing household tasks, as well as inability to lift and hold objects with this right hand. The reports also show medical improvements –

including reduced swelling and near normal range of motion. Plaintiff also reported improvements in pain. *Id*. At his December 29, 2023, visit, Plaintiff advised he had no increase in tingling or burning in his right hand and reported using his right hand "for gaming without difficulties." R. 1801. Regarding therapy treatment, while his medical team recommended therapy two times per week, on January 5, 2024, Plaintiff reported he would reduce his therapy sessions to once a week. R. 1804. At his January 8, 2024, medical visit, Plaintiff decided to proceed with carpal tunnel surgery on his left wrist. 1808-11. Also at that visit, Plaintiff reported improvement since his previous visit, and he wished to "proceed with activity as tolerated with a home exercise program" as to his right wrist. *Id*. On January 24, 2023, Plaintiff reported improvements with mobility and scar sensitivity. R. 1812. Also noted on that date, Plaintiff was able to use his right hand to cut food, care for his cats, and pick up his cats with his right hand. R. 1814. He also reported difficulty lifting and carrying heavier objects such as a soda can and heavy pans. *Id*. In Plaintiff's medical report of February 9, 2024, two weeks following his left-hand surgery, he reported pain and difficulty with fine motor tasks such as dressing and bathing. He also reported problems with completing heavy household chores, due to increased left hand pain. R. 1816. This report also set out numerous short- and long-term goals for Plaintiff's recovery and noted "excellent rehabilitation potential" pending Plaintiff's compliance. R. 1816-20. At his deposition in April of 2024, Plaintiff testified that he was healing from his surgeries but continued to feel some numbing pain. He also testified that his left hand was "more deficient" than his right hand but attributed that to the fact that his left-hand surgery was more recent. R. 50-51. Plaintiff also testified that he continued to do home therapy. *Id*.

In her decision, the ALJ noted Plaintiff's November 2023 right ulnar nerve decompression surgery. R. 25. Her review goes on to state that Plaintiff's examination findings the following month (and beyond) revealed good gross sensation to fine touch on the radial and ulnar aspects of all five digits. *Id*. While Plaintiff continued to report pain, in December 2023 there was noted improvement in swelling. Shortly after, Plaintiff denied any increased tingling or burning in the right hand and reported he was able to use his right hand for gaming without difficulties. *Id*. The decision also noted that the following month – January 2023 – Plainitff acknowledged that his right hand was doing better. Examination showed improvement as well. *Id*. The ALJ's decision further noted Plaintiff's January 2024 surgery and continued follow-up treatment. R. 25-26.

Plaintiff's argument that the ALJ "played doctor" is unsupported. Plaintiff relies on his own self-serving statements to support this argument. Additionally, while the ALJ acknowledged the state agency physical assessments completed by Dr. Chapa and Dr. Jhaveri, she found them only "partial persuasive," "generally consistent with the medical evidence of record," and "generally persuasive." R. 28. The decision clarifies that the ALJ took into account the medical record as a whole, as well as Plaintiff's testimony, and provided a modified RFC from the state agency assessments. *Id*. Taking this into consideration, the Court cannot find that the ALJ's conclusion that Plaintiff was capable of light work was unsupported. Additionally, examining the state agency consultants' opinions as well as the record as a whole, Plaintiff has failed to show later evidence would have changed the outcome. "It is well-established that ALJs may not rely on a state agency consultant's assessment if later evidence reasonably could have changed the opinion." *Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023) (citations and quotations omitted). However, "older assessments can still constitute substantial evidence supporting the ALJ's decision where the new [evidence] do[es] not necessarily undermine previous medical conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023) (citations and quotations omitted). "The critical question is whether

the new evidence contains significant and new developments that reasonably could have changed the previous reviewing consultant's assessment." *Id*. Here, the "new evidence" – Plaintiff's subsequent surgeries – reasonably would not have changed the assessments. The medical records (including Plaintiff's reports to his medical team as well as his testimony) reveal post-surgery improvements. Additionally, Plaintiff has not provided the Court with any record or argument to support a contrary conclusion. The Court finds the ALJ finding of a capacity for light work in the RFC supported by substantial evidence.

**Frequent Bilateral Fine Manipulation**

Next, Plaintiff argues the ALJ did not address whether Plaintiff could frequently reach, handle, and perform fine manipulations bilaterally. In support of this argument, Plaintiff cites to one page of his testimony transcript that his right hand "sometimes…goes through little paralyzing effects," and a "numbing pain that I can't really describe effectively. And for both hands, essentially, these two fingers go through bouts of just – they're completely numb, or they just feel like they're being pulled apart." R. 50. Plaintiff does not cite to any medical record. However, the ALJ's decision does, in fact, address medical records related to Plaintiff's bilateral hand issues.

As part of her RFC assessment, the ALJ reviewed medical records from March, June, and October 2020 regarding Plaintiff's wrist and elbow pain, noting Plaintiff's subjective complaints and positive examinations for decreased range of motion, tenderness, and swelling. R. 24. The decision further includes October 2022 records of hand pain, and a diagnosis of bilateral hand pain due to neuropathy from uncontrolled diabetes. It goes on to summarize medical records from February 2023 noting sensory deficits present in bilateral hands and fingers, but no abnormalities. In March 2023, as included in the RFC assessment, Plaintiff was positive for carpal tunnel and cubital tunnel syndrome. *Id*. The ALJ's decision further noted Plaintiff's medications in relation to these conditions. *Id*. The RFC analysis next spends over a page on medical records related directly to Plaintiff's bilateral feet and hands. It notes records of 5/5 grip strength, Plaintiff's ability to make a fist, pick up objects, open and close doors, oppose thumb to fingers, and flip pages. R. 25. These records date to June 2023. In August 2023, Plaintiff's hand range of motion was normal, despite his reported complaints. At that time, no tenderness was observed and Plaintiff maintained gross motor function. *Id*. The decision then reviewed Plaintiff's November 2023 right ulnar nerve decompression surgery, including his post-operative improvements, as well as Plaintiff's January 2024 left ulnar nerve decompression surgery. *Id*. The ALJ's decision further reviewed Plaintiff's ability to engage in activities of daily living – including maintaining his personal hygiene, preparing simple meals, performing household chores such as laundry, grocery shopping, and accessing the internet. R. 22. A careful review of the ALJ decision, especially what the ALJ included in the RFC assessment, reveals that Plaintiff has failed to provide support for his argument that the ALJ did not properly assess Plaintiff's limitations in his ability to use his hands.

**Listings Analysis**

Finally, Plaintiff argues that the ALJ performed a perfunctory analysis of listings for mental disorders. Specifically, he states that the ALJ erred in finding that listings 12.04, 12.06, 12.11, and 12.15 were not met or medically equaled. The burden of proof is on Plaintiff to establish that he meets or equals a listing. *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022).

At step three of the five-part analysis – the evaluation of the listings –if an impairment meets or equals a listing in 20 C.F.R. § 404, Subpart P, Appendix 1, a claimant will be found *per se* disabled. 20 C.F.R. § 416.920(a)(4)(iii). Listings 12.04, 12.06, and 12.15 each have three paragraphs. Each listing requires a satisfaction of paragraph A, which is the specific type of disorder; and then satisfaction of either paragraph B or C, which addresses the impact of the disorder on the claimant. The ALJ only addressed the impact of the disorder in paragraphs B and C, agreeing that, pursuant to paragraphs A, Plaintiff suffered from depressive disorder (12.04), anxiety disorder (12.06), ADHD (12.11) and PTSD (12.15). The paragraph B criteria for all three relevant listings provides that the ALJ must find an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember, or apply information; 2. Interact with others; 3. Concentrate, persist, or maintain pace; [and] 4. Adapt or manage oneself." 20 C.F.R. § 404, Subpart P, App. 1, §§ 12.04(B), 12.06(B), 12.15(B). As to the three relevant listings, the ALJ found no extreme limitation, but did find that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. R. 21-22. Because the ALJ found that Plaintiff's mental impairments did not cause at least two marked limitations, or one extreme limitation, the ALJ found that the paragraph B criteria was not satisfied.

As to paragraph C, the ALJ noted that there was no evidence of a "serious and persistent" disorder that would "diminish[] the symptoms and signs of the mental disorder and marginal adjustment or minimal capacity to adapt to changes in the environment or to demands that are not already part of one's daily life, as required by 'paragraph C' of [the] Listings." R. 22.

In finding that Plaintiff had a mild limitation in understanding, remembering, or applying information, the ALJ noted that while Plaintiff alleged to have difficulty with memory, the medical record was absent information to support this position. R. 21. Medical examinations showed Plaintiff to be alert, cooperative, and with adequate memory functioning. *Id*. The ALJ also properly relied on Plaintiff's reports of his ability to perform activities of daily living such as grocery shopping and chores, both of which require a certain degree of understanding and remembering. *Id*. In his brief, Plaintiff acknowledges medical records that found Plaintiff to be within normal limits of insight, thought, and judgment, as well as consistently cooperative. [15], pp. 7-8. He also points out portions of the medical record indicating impairments, including one part of one medical record where Plaintiff was given a mental status examination and was unable to recall a series of numbers past four digits. *Id*., R. 1291. Plaintiff's impairments were not overlooked by the ALJ (see R. 26-27). The Court finds that the ALJ's determination that Plaintiff had a mild limitation in understanding, remembering, and applying information was not perfunctory or in error.

The ALJ found that Plaintiff has a moderate limitation in interacting with others. R. 21. In her decision, the ALJ acknowledged that Plaintiff had a history of anxiety, depression, and PTSD, as well as symptoms including panic attacks, low mood, irritability, and anger. Yet, more recent medical records and Plaintiff's subjective symptoms revealed that Plaintiff maintained a euthymic mood, was described as calm, cooperative, pleasant, and exhibited normal behavior. The ALJ also recognized that Plaintiff was able to maintain relationships with family members and spend time with them. *Id*. Plaintiff argues his unpredictable mood and affect warranted a finding that he had a

6

marked limitation in this functioning area. The record fails to support this position. Moreover, the Court does not overlook the Agency's code regarding the listing of impairments. In pertinent part, it states that the listing of impairments "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). The Court finds nothing in the ALJ's decision or the record as a whole that would justify a finding that Plaintiff had an extreme limitation in his interaction with others. The ALJ's finding that Plaintiff had a moderate limitation in interacting with others was not in error.

Next, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. Plaintiff provides very little argument or support for his position that the ALJ erred in her finding that Plaintiff had less than a marked limitation in this area. Plaintiff argues references in the medical record to his "mood and affects," his testimony, and his panic attacks, as evidence that the ALJ should have found a marked limitation in concentration, persistence, and pace. In her decision, the ALJ acknowledged Plaintiff's history of ADHD, as well as his subjective complaints, and found that in conjunction with medical evidence that Plaintiff often appeared alert, oriented, and with intact concentration, a moderate limitation in this area was justified. R. 21. Plaintiff has failed to meet his burden of proof that he met or equaled this listed impairment.

Finally, Plaintiff argues the ALJ's finding that he had a mild limitation in adapting or managing himself was error. Again, Plaintiff has provided little substantive argument to support his position. He again notes that his mood and affect were unpredictable, that he experienced past suicidal ideations, that his father-in-law needed to accompany him in public, that he spent the first hour of his day angry, and that while he cooks for his wife, he rarely eats himself. In her decision, the ALJ acknowledged references in the record to reports of suicidal ideation, yet the record noted Plaintiff denied this ideation. R. 21-22. Again, the ALJ cited to Plaintiff's reports of being able to engage in daily activities such as personal care and hygiene, household chores and meal preparation, laundry, grocery shopping, accessing the internet, and reading. The ALJ concluded that the record supported a finding that Plaintiff experienced no more than a mild limitation in adapting or managing himself. R. 22. Plaintiff offers the Court no substantive argument to find otherwise. The Court finds that Plaintiff has failed to meet his burden and, notwithstanding, the ALJ findings were neither perfunctory nor in error. The Court affirms the ALJ's step three finding.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse and remand the Commissioner's decision [15] is denied and the Commissioner's motion for summary judgment [20] is granted.


Date: December 10, 2025                 ENTER:

                                        *Margaret J. Schneider*
                                        United States Magistrate Judge